IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| DERRICK C. LITMAN,         )<br>                            )<br>      Plaintiff,           )<br>                            )<br>v.                          )<br>                            )<br>ANDREW SAUL,                )<br>Commissioner of Social Security, )<br>                            )<br>      Defendant.            )<br>_____) | Action No. 4:19cv50 |

## REPORT AND RECOMMENDATION

This matter is before the Court on *pro se* Plaintiff Derrick C. Litman's ("Plaintiff") Complaint, ECF No. 3, filed pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Defendant Andrew Saul, the Commissioner of the Social Security Administration ("the Commissioner"), denying Plaintiff's claim for Supplemental Security Disability Income ("SSDI") under the Social Security Act ("SSA"). Plaintiff filed a Motion for Summary Judgment, ECF No. 17, and the Commissioner filed a cross-Motion for Summary Judgment and Memorandum in Support, ECF Nos. 20, 21, which are now ready for recommended disposition. This action was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. §§ 636(b)(1)(B)-(C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002 Standing Order on Assignment of Certain Matters to United States Magistrate Judges. After reviewing the briefs, the undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 17, be **DENIED**, the Commissioner's Motion

for Summary Judgment, ECF No. 20, be **GRANTED**, and the final decision of the Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**.

## I. PROCEDURAL BACKGROUND

The Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits on November 25, 2013, and a Title XVI application for SSDI on November 27, 2013, alleging an onset date of August 15, 2012. R. at 135, 283.[1] His application was initially denied on October 30, 2014, and again denied upon reconsideration on October 26, 2015. R. at 192, 169. Plaintiff then requested a hearing in front of an administrative law judge, which was conducted on August 30, 2017. R. at 104. Plaintiff appeared at the hearing without representation. R. at 104. On November 3, 2017, the ALJ issued a decision denying Plaintiff's SSDI application. R. at 11-23. Plaintiff then filed a request with the Appeals Council to reconsider the ALJ's decision, which was denied by the Appeals Council on March 12, 2019. R. at 1-4. The Appeals Council denied Plaintiff's request for review because the Appeals Council found no reason under the rules to review the ALJ's decision, making the ALJ's decision the Commissioner's final decision. R. at 1.

Having exhausted his administrative remedies, on May 20, 2019, Plaintiff filed the instant Complaint for judicial review of the Commissioner's decision. ECF No. 3. The Commissioner filed an Answer on July 18, 2019. ECF No. 8. The matter was referred to the undersigned on July 19, 2019. ECF No. 10. Plaintiff filed his Motion for Summary Judgment on September 17, 2019, ECF No. 17, and the Commissioner filed a cross-Motion for Summary Judgment and a Memorandum in Support on October 16, 2019, ECF Nos. 20-21. The matter is now ripe for recommended disposition.

---

[1] "R." refers to the certified administrative record that was filed under seal on July 18, 2019, ECF No. 9, pursuant to Local Civil Rules 5(B) and 7(C)(1).

2

## II. RELEVANT FACTUAL BACKGROUND

Plaintiff was born on December 19, 1983, and was twenty-eight years old at the time of his alleged disability onset date, making him a "younger individual" under the SSA's regulations. *See* R. at 283. *See also* 20 C.F.R. § 416.963(c) (defining anyone under the age of fifty as a "younger person."). On August 30, 2017, Plaintiff appeared *pro se* and testified before the ALJ at the administrative hearing. R. at 105. The Plaintiff's mother, Katherine Litman, R. at 104, 119-129, and Edith Edwards, an impartial vocational expert ("VE"), R. at 11, 130-132, also appeared and testified. The record included the following factual background for the ALJ to review:

Plaintiff testified that he dropped out of school in the tenth grade and obtained his GED. R. at 108-109. Plaintiff previously worked doing odd jobs, that involved physical work such as landscaping, cutting grass, trimming bushes, and mulching. R. at 108-109. Plaintiff stated that people "send [the jobs] my way if they can." R. at 109. Plaintiff expressed having difficulty working because he has trouble "just making [him]self get up and do it." R. at 109. Plaintiff testified that he has trouble working these physical jobs now to a back injury, thumb injury, and ankle injury. R. at 109. With respect to Plaintiff's thumb, Plaintiff testified that he broke his thumb in sixth grade and had it casted, but at an unspecified later time, it "popped back out." R. at 110. Plaintiff contends that it still gives him trouble. R. at 110. With respect to his ankle, Plaintiff testified that he shattered his ankle when he fell out of a tree approximately eight years ago. R. at 110. Plaintiff did not seek treatment for his ankle injury but contends that it still gives him "issues." R. at 111.

Plaintiff also discussed his prior drug use and criminal history. R. at 111-112. Plaintiff stated that has been in and out of jail since he was eighteen. R. at 111. When he was eighteen, he

was convicted of grand larceny and statutory burglary. R. at 112. Since then, he served additional time for violating his probation by failing to report. R. at 112.

At the time of the August 30, 2017 hearing, Plaintiff was prescribed Aprezol, Xanax, and Adderall and takes those medications daily. R. at 114. Plaintiff stated that he was diagnosed as bipolar while he was incarcerated. R. at 114. Plaintiff was prescribed Lithium which was monitored by regular blood tests. R. at 114. Plaintiff described that while on Lithium, he "felt more even all the way across the board." R. at 114.

Plaintiff stated that he has social anxiety in large groups, but does okay in smaller settings. R. at 115-116. Plaintiff stated that he can handle money. R. at 116. Plaintiff has friends, and helps his neighbor shoe horses. R. at 118. Plaintiff lives alone, and takes care of his personal needs. R. at 119. Plaintiff can start tasks, but has trouble finishing them unless it is something that interests him. R. at 116-117. He enjoys reading about American history, world history, and nature. R. at 117. Plaintiff stated that he has been in and out of jail since he was eighteen. R. at 111. Most recently, Plaintiff was released from jail a year prior to the hearing date. R. at 111.

When asked if he could perform light duty work, Plaintiff testified "Sure" but noted it is hard to find jobs with his criminal history. R. at 112. Plaintiff testified "I'm sure there are" in response to the ALJ's question about whether there are jobs he could do successfully. R. at 113. Plaintiff later testified that there are issues with his mental health that could "sometimes" prevent him from doing a job. R. at 113. Plaintiff stated that he "like[s] to work." R. at 119.

## A. Evidence Relevant to Plaintiff's Back Disorder

Plaintiff has a history of back pain stemming from a motor vehicle accident in June 2013. R. at 514. On November 12, 2013, Plaintiff saw Dr. Harrington at Churchland Internal Medicine and reported mild pain in his neck and back. R. at 503, 561. When Plaintiff returned to Dr.

4

Harrington on April 17, 2014, he reported severe pain and circulation issues in is arms and legs. R. at 505. Plaintiff was advised to see a chiropractor monthly to help with his pain, and was advised to quit smoking. R. at 505.

On April 28, 2014, Plaintiff had an MRI on his lumbar spine. R. at 583. At the L4-L5, the MRI demonstrated a mild broad-based disc protrusion mild facet arthropathy and prominent buckling of the ligamentum flavum at the L4-L5. At the L5-S1, the MRI demonstrated mild facet arthropathy "at most," mild to moderate left and moderate right foraminal stenosis, disc desiccation and mild loss of disc height posteriority, and mild to moderate broad-based disc protrusion with some underlying osteophyte complex at the corners. R. at 583-584. Plaintiff was prescribed oxycodone and Prednisone.

On May 14, 2014, Plaintiff saw Dr. Sinkiewicz who summarizing Plaintiff's back injuries. R. at 514. Dr. Sinkiewicz noted that Plaintiff indicated his pain has increased gradually over time. R. at 514. Plaintiff also complained of neck pain between his shoulder blades, which he reported to have been going on for years. R. at 514. Dr. Sinkiewicz noted that Plaintiff was seen in local emergency departments three times in the preceding two weeks for the pain, and obtained 90 tabs of oxycodone in a thirteen day period. R. at 515. The pain in his neck back ankle and knee was reported as throbbing, sharp, dull, persistent and constant. R. at 515. Plaintiff was referred to physical therapy for treatment of the lumbar spine and Plaintiff was referred to a PCP for additional workup of diffuse joint pain. R. at 517.

## B. Evidence Relevant to Plaintiff's Mental Impairments

Plaintiff was diagnosed at a very young age with ADHD. On February 11, 1994, when Plaintiff was ten years old, Dr. Dan Darby, M.D., noted that Plaintiff had been taking Ritalin since the second grade, and he had been taking Pamelor nightly. R. at 564. Dr. Darby noted that Plaintiff

"struggles with low motivation, excess energy, distractibility, inattention, and impulsivity. R. at 564. Dr. Darby evaluated Plaintiff's thought content as "impulsive with mild depressive thoughts." R. at 564.

On January 13, 2005, Plaintiff presented to Dr. Harrington at Churchland Internal Medicine for an initial evaluation. R. at 545. Dr. Harrington reported "[o]bviously underlying depression with ADHD." *Id.* His symptoms indicated "severe depression." *Id.* On March 11, 2005, Sarah Moore, M.D., agreed with Dr. Harrington's diagnosis of Dysthymic Disorder and ADHD. *Id.* Dr. Moore switched Plaintiff from Adderall XR to Adderall and started on 5mg of Lexapro. *Id.*

On May 5, 2005, Plaintiff presented to Dr. Harrington for a follow up appointment where he was prescribed Zoloft and Adderall. R. at 550. On November 21, 2005, Plaintiff again presented to Dr. Harrington and noted that he was unable to tolerate Lexapro after one month. R. at 551. Plaintiff reported that he had stopped taking Adderall. *Id.* Dr. Harrington indicated that Plaintiff was not suicidal. *Id.* On February 24, 2009, Plaintiff appeared at Churchland Internal Medicine complaining of anxiety and depression, and was prescribed Paxil. R. at 555.

Plaintiff saw Dr. Harrington again on January 18, 2013 for symptoms related to depression. R. at 501. Plaintiff presented Dr. Harrington with a list of symptoms typical of depression. *Id.* Dr. Harrington noted that Plaintiff has some good guy friends. *Id.* He was prescribed 20mg of Paxil to take daily and 20 mg of Adderall to take daily. *Id.* On September 4, 2013, Plaintiff reported feeling "more depressed" but nonsuicidal. R. at 502. Plaintiff noted that he only took a few doses of Paxil and was not sure why he stopped. *Id.* Plaintiff reported to Dr. Harrington that he wanted to go back on Paxil. *Id.* Later on November 12, 2013, Plaintiff reported to Dr. Harrington that he thought he was addicted to Percocet and has been getting oxycodone off streets.

R. at 503. Plaintiff wanted to double his Paxil, requested more Xanax, and reported being unhappy with his life. *Id.*

On January 4, 2015, Plaintiff was evaluated by a mental health counselor and a mental health practitioner. R. 525. Then, Plaintiff stated he had anxiety and depression, but had not taken his medication for eight months and does not want to be on medication. *Id.* His mood was described as euthymic. R. at 526. On June 17, 2015, Plaintiff presented to Dr. Harrington, where it was noted that he had just gotten out of jail for violating probation, would like to get back on medication, and would like to keep off opioids. R. at 577. Plaintiff's depression was "ok". *Id.*

On October 17, 2015, Plaintiff presented to consultative medical examiner Curtis R. Bryan, M.D. of Disability Determination Services Department of Rehabilitative Services. R. at 589. Dr. Bryan concluded that Plaintiff

> cannot adequately perform detailed and complex tasks due to his inattention but can complete simple and repetitive tasks. He can maintain regular attendance in the work place and perform work activities on a consistent basis without special or additional supervision for up to two months at a time. [He] can complete a normal workday or workweek without interruptions, resulting from psychiatric conditions, but reports being unable to sustain regular employment for more than two months due to depressive episodes. He has difficulty adequately accepting instructions from supervisors, interacting with coworkers and with the public due to his inattention and periodic episodes of depression. [He] cannot deal effectively with the usual stresses encountered in sustained competitive work due to his inattention and periodic episodes of low energy.

R. at 592-593.[2]

### III. THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

A sequential evaluation of a claimant's work and medical history is required in order to determine if the claimant is eligible for benefits. 20 C.F.R. §§ 404.1520, 416.920; *Mastro v. Apfel*,

---

[2] Plaintiff submitted additional records to the Appeals Council after the ALJ's decision. R. at 2. The Court does not consider this evidence new or material, *see Wilkins v. Sec'y of Health and Human Servs.*, 953 F.2d 93, 95-96, for the reasons noted by the Appeals Council. R. at 2.

270 F.3d 171, 177 (4th Cir. 2001). The ALJ conducts a five-step sequential analysis for the Commissioner, and it is this process that the Court examines on judicial review to determine whether the correct legal standards were applied and whether the resulting final decision of the Commissioner is supported by substantial evidence in the record. *Id.* The ALJ must determine if:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.

*Strong v. Astrue*, No. 8:10-cv-00357, 2011 WL 2938084, at *3 (D.S.C. June 27, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (noting that substantial gainful activity is "work activity performed for pay or profit."); *Underwood v. Ribicoff*, 298 F.2d 850, 851 (4th Cir. 1962) (noting that there are four elements of proof to make a finding of whether a claimant is able to engage in substantial gainful activity). "An affirmative answer to question one, or negative answers to questions two or four, result in a determination of no disability. Affirmative answers to questions three or five establish disability." *Jackson v. Colvin*, No. 2:13cv357, 2014 WL 2859149, at *10 (E.D. Va. June 23, 2014) (citing 20 C.F.R. § 404.1520).

Under this sequential analysis, the ALJ made the following findings of fact and conclusions of law: First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 15, 2012. R. at 13. Second, the ALJ determined that Plaintiff suffered from the following severe impairments: back disorder, attention deficit hyperactivity disorder; mood disorder; and anxiety. R. at 13. The aforementioned impairments were found to be severe as they caused more than minimal limitations in the Plaintiff's ability to perform basic work activities. R. at 14. To the extent that Plaintiff alleged other impairments, including: substance abuse, remote ankle injury, and remote right thumb fracture, the ALJ found such impairments to

be non-severe because they either did not exist for a continuous period of twelve months, were responsive to medication, did not require any significant medical treatment, or did not result in any continuous exertional or nonexertional functional limitations. R. at 15.

Third, the ALJ determined that the evidence failed to show that Plaintiff has "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt P, App. 1." R. at 14 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). The ALJ assessed Plaintiff's "severe" impairments, including his back disorder under section 1.00 (Musculoskeletal System); and his mental impairments under section 12:00 (Mental Disorders). R. at 14. The ALJ found that Plaintiff's back disorder did not meet or medically equal the severity required by Listing 1.04 because he did not have significant deficits in motor, reflex and sensory function, signs of spinal arachnoiditis, or spinal stenosis resulting in ineffective ambulation. R. at 15.

The ALJ performed an additional analysis with respect to mental impairments under sections 12.02 (neurocognitive disorders), 12.04 (depressive, bipolar and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders), using the "paragraph B" criteria to determine the severity of Plaintiff's mental impairments. R. at 15. To satisfy the paragraph B criteria, a mental impairment must result in "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning. 20 C.F.R. Pt. 404, Subpt P, App. 1. The ALJ found that none of Plaintiff's mental limitations satisfied "paragraph B" criteria because Plaintiff suffered only mild limitations to understanding, remembering, or applying information; moderate limitations interacting with others; moderate limitations to concentration, persistence, or pace; and mild limitations to adapting and self-management. R. at 16

9

The ALJ also considered whether "paragraph C" criteria were satisfied, and determined that the record did not support that Plaintiff had a serious and persistent mental disorder, meaning a medically documented history of the disorder over a period of two years with evidence of treatment that was ongoing and which diminished the signs and symptoms of the disorder, nor that he had "marginal adjustment," meaning minimal capacity to adapt to changes in his environment or demands that were not already part of his daily life. R. at 16.

Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work as defined by the SSA regulations, except that Plaintiff could not perform more than occasional postural activities, could not have more than occasional contact with co-workers, supervisors, and/or the general public, and could only perform simple, routine, and repetitive tasks at a routine pace throughout the course of an eight-hour workday. R. at 17.

While the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged by Plaintiff, the ALJ found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. at 18. With respect to Plaintiff's mental impairments, the undersigned considered Plaintiff's school records and Plaintiff's mental status examination results. Plaintiff had an IEP plan in school and was provided accommodations such as additional time to complete tests in an environment separate from other students. R. at 18. Though deemed to have above average academic ability, Plaintiff had frequent absences and problems with motivation and distractibility. R. at 18. Plaintiff was prescribed medication for his ADHD, depression, and anxiety and after several years of treatment, Plaintiff indicated in June 2015 that his depression was "ok." R. at 18. When Plaintiff was provided a mental status evaluation, he reported he was suicidal, but was found to have an

intact thought process devoid of homicidal or suicidal ideation. At that time, his mood was only mild dysphoric. R. at 18.

With respect to Plaintiff's back disorder, the ALJ considered Plaintiff's medical records. R. at 19. Plaintiff reported mild pain in his neck and back in November 2013, but by April 2014, Plaintiff had severe pain and numbness in his arms and legs, and had decreased range of motion in his neck. *Id.* Plaintiff was prescribed Gabapentin but was not referred to a specialist until 2014. *Id.* Plaintiff sought emergency treatment three times in a two-week period, however, the ALJ noted that such behavior could have been related to Plaintiff's drug-seeking behavior. *Id.* Plaintiff saw an orthopedist in May 2014 which revealed some limited motion and tenderness on his thoracic and lumbar spine, and an MRI revealed mild disc protrusion, mild faacet and mild loss of disc height. *Id.* Plaintiff was referred to physical therapy but there was no discussion of surgery or medication. *Id.* The ALJ noted that Plaintiff credited his inadequate medical treatment to a lack of financial and medical resources, but there was no indication Plaintiff's ailments required emergency care and no indication Plaintiff sought assistance from free or low cost clinics. *Id.*

The ALJ also considered Plaintiff's daily activities and determined his activities were not substantially restricted. *Id.* Plaintiff lived alone, and was able to shower, take care of animals, clean, do laundry, and drive. *Id.* Plaintiff had friends, and read books that required a level of focus. *Id.* The ALJ noted Plaintiff's work history, which, although not substantial gainful activity, consisted of work activities as a landscaper, pipe layer, and contractor, and thus demonstrated that he could perform work that required physical exertion. R. at 20.

The ALJ gave little weight to the opinion of Curtis Bryan, M.D., who opined that Plaintiff could not adequately perform detailed and complex tasks due to his inattention but can perform simple and repetitive tasks, because the opinion is not consistent with other mental health treatment

11

records. R. at 20. The ALJ also gave little weight to statements provided by the Plaintiff's family members, including the Plaintiff's grandfather, grandmother, and mother. Plaintiff's family members opined that Plaintiff has a difficult time functioning as an independent adult, but those opinions did not link or connect Plaintiff's difficulties to a medical impairment. R. at 20.

The ALJ gave great weight to non-treating, non-examining medical opinions provided by the State agency medical and psychological consultants because the opinions were consistent with the evidence in the record. R. at 21. At the initial level, the consultants lacked evidence to evaluate the claim, but at the reconsideration level the consultants did not find Plaintiff's back disorder to be severe, and noted that Plaintiff's pain was decreasing over time. *Id.* The mental health consultants determined that Plaintiff had no more than moderate limitations, and found that Plaintiff could perform one or two-step substantial gainful tasks, especially if Plaintiff refrained from using alcohol and cannabis. *Id.*

Next, the ALJ determined that, because the Plaintiff was previously engaged in heavy unskilled work, and in light of Plaintiff's RFC to perform no more than medium work, Plaintiff was unable to perform his past relevant work. R. at 21. Consequently, following a series of hypothetical questions put to the vocational expert, the ALJ determined that, considering Plaintiff's age, education, and work experience and RFC, Plaintiff was capable of performing several jobs in the national economy at the medium and unskilled level and light and unskilled level, and therefore was not disabled. R. at 22-23.

## IV. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of the Commissioner's final decision is limited to determining whether the decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g);

*Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

In determining whether the Commissioner's decision is supported by substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for the decision falls on the [Commissioner] (or the [Commissioner's] delegate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). Accordingly, if the Commissioner's denial of benefits is supported by substantial evidence and applies the correct legal standard, the Court must affirm the Commissioner's final decision. *Hays*, 907 F.2d at 1456.

## V. ANALYSIS

Plaintiff presents two claims of error: first, that the ALJ erred by not accepting the Vocational Expert testimony posed by the ALJ hypothetical; and second, that the ALJ erred because Plaintiff's limitations are at least marked, not moderate and therefore Plaintiff meets the listing criteria.

### A. The ALJ Did Not Err in Declining to Accept the Vocational Expert's Testimony Posed by the ALJ's Hypothetical

Plaintiff argues that the ALJ erred by not accepting the vocational expert's testimony that there would be no work if Plaintiff was off task more than 15% of the time, or was absent from work two or more days per month. ECF No. 17 at 4-5. Similarly, Plaintiff argues that he cannot meet the work requirements for the positions identified because Plaintiff could not perform a job

13

where he was off task more than 15% of the time or where he was absent from work two or more days per month. ECF No. 17 at 11.

An ALJ has "great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question." *Koonce v. Apfel*, 166 F.3d 1209 (4th Cir. 1999). Although an ALJ may ask a hypothetical question based on limitations argued by the Plaintiff, the ALJ is only obligated to consider the RFC and any limitations that are supported by *credible* evidence in the record. *Russell v. Barnhart*, 58 F. App'x 25, 30 (4th Cir. 2003) (emphasis added).

By not including the limitations that Plaintiff would be off task more than 15% and that Plaintiff would miss two or more days of work per month in the decision, the ALJ necessarily did not accept these limitations as supported by evidence in the record. Contrary to Plaintiff's assertion, the ALJ did not accept such limitations as fact simply by posing questions to the vocational expert using these hypothetical limitations. R. at 21. Instead, the ALJ ultimately concluded that those limitations were not sustained by the evidence, and the vocational expert's testimony in answering the questions posed by the ALJ were without support in the record.

Here, the ALJ's RFC determination was supported by substantial evidence. The ALJ considered the evidence in the record, including Plaintiff's educational history, medication and history of depression and anxiety, activities of daily living, work history, and nontreating medical source opinions of the Plaintiff's condition to support the findings of Plaintiff's RFC limitations related to his mental health. The ALJ extensively analyzed the opinions of consultative examiner Curtis Bryan, M.D., statements by Plaintiff's family members, and the nontreating, nonexamining medical source opinions made by the State agency medical and psychological consultants at the initial and reconsideration levels. R. at 20-21. The ALJ considered the psychological consultants'

findings that Plaintiff had no more than moderate limitations, because the Plaintiff is able to drive, go out alone, live independently, and perform daily activities. R. at 21. The ALJ gave great weight to the psychological consultant's findings that Plaintiff could perform one or two step substantial gainful tasks because the finding was consistent with the evidence in the record. Because the ALJ did not accept the limitations that Plaintiff would be off task more than 15% of the time or miss more than two days of work, the ALJ did not err by not considering the vocational expert's testimony that these limitations would result in no work.

## B. The ALJ's Finding that Plaintiff Did Not Meet or Medically Equal a Listing was Supported by Substantial Evidence

Plaintiff argues that the ALJ erred because Plaintiff's limitations are at least marked, not moderate, and therefore he meets the Listing criteria. To meet the Listing criteria of either Section 12.02, 12.04, or 12.06, a claimant must satisfy the "paragraph B" criteria. To satisfy the paragraph B criteria, the claimant's medical impairments must result in at least one extreme or two marked limitations[3] in the following areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.02, 12.04, 12.06.

Under the first category, the ALJ found that the Plaintiff had a mild limitation[4] in understanding, remembering, or applying information. R. at 15. To support this conclusion, the ALJ cited Plaintiff's October 2015 mental status examination in which Plaintiff was able to perform a variety of mental tasks, including remembering three of four items in five minutes, reciting seven numbers forward and four numbers backward, performing math problems with

---

[3] "Extreme limitation" means the individual is not able to function in this area independently, appropriately, effectively, and on a sustained basis. 20 C.F.R. Pt. 404, Subpt. P, App. 1. "Marked limitation" means the individual's functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited. *Id.*
[4] "Mild limitation" means the individual's functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited. 20 C.F.R. Pt. 404, Subpt P, App. 1.

15

limited mistakes. *Id.* Accordingly, substantial evidence supports the ALJ's determination that Plaintiff experiences only a mild limitation in this area.

Under the second category, the ALJ found that the Plaintiff had a moderate limitation[5] in the interacting with others category. *Id.* The ALJ concluded that the record was "replete with indications of living with different relatives" and "[i]t appears that once [Plaintiff] moved in with someone, tension and problems increased." *Id.* The ALJ also pointed to Plaintiff's criminal history as evidence that Plaintiff had a moderate limitation in this area. *Id.* However, despite Plaintiff's limitations, the ALJ noted that the records demonstrated that Plaintiff reported in 2013 having some good guy friends, and reported in 2015 spending time with friends. R. at 16. At the hearing Plaintiff stated that he has friends, associates, and acquaintances that he sees. R. at 117. He testified that he helps his neighbor across the street shoe horses. R. at 118. Plaintiff does so "just for fun" and because he "enjoy[s] doing it." *Id.* Thus, substantial evidence supports that Plaintiff only has a moderate limitation in this area.

Under the third category, the ALJ found that the Plaintiff had a moderate limitation in concentrating, persisting, or maintaining pace. R. at 16. In making this determination, the ALJ gave some credit to the Plaintiff's long history of ADHD. *Id.* The ALJ explained that Plaintiff has a history of ADHD and of taking Adderall to control his ADHD, but noted that Plaintiff did not make complaints regarding attention and focus during the time period in question. *Id.* Although at the October 2015 mental evaluation the examiner found that Plaintiff's judgment and insight was "marred" by inattention, the ALJ gave little weight to that opinion because the examiner did not quantify the inattention he observed. *Id.* Additionally, at the hearing, Plaintiff testified that he reads about American history, world history, and the natural world. R. at 117.

---

[5] "Moderate limitation" means the individual's functioning in this area independently, appropriately, effectively, and on a sustained basis is fair. 20 C.F.R. Pt. 404, Subpt P, App. 1.

16

Thus, substantial evidence supports the ALJ's conclusion that Plaintiff has a moderate limitation in this area.

Under the fourth category, the ALJ determined that Plaintiff had a mild limitation in adapting or managing himself. R. at 16. The ALJ supported this finding by noting that Plaintiff has not "require[d] emergenc[y] treatment or crisis intervention for his symptoms, has been able to perform work doing odd jobs, and has been able to live independently for several years." *Id.* The ALJ's conclusion is well supported in the record, as Plaintiff lives alone but takes care of his home and property, including chickens, attends to his personal needs such as cooking, cleaning, laundry and household repairs, watches television and reads, drives an automobile, visits with friends, engages in woodworking and detailing cars, goes fishing with family members, and provides help to his relatives. *See*, R. at 117, 118, 121, 324, 326-28, 590-91. Accordingly, substantial evidence supports the ALJ's conclusion that Plaintiff only has a mild limitation in adapting or managing oneself.

Lastly, to the extent the Plaintiff argues that his impairments satisfy the paragraph C criteria to meet the listings of 12.02, 12.04, or 12.06, that argument is without merit. To satisfy the paragraph C criteria, the claimant's medical impairments must be serious and persistent—including a medically documented history of the existence of the disorder over a period of at least two years, and evidence of medical treatment in a highly structured setting that is ongoing and diminishes the symptoms and signs of the mental disorder, and marginal adjustment, meaning minimal capacity to adapt to changes in one's environment or demands that are not already part of one's daily life. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.02, 12.04, 12.06. The ALJ concluded, and the Court agrees, there is little evidence in the record that Plaintiff's mental disorders are serious and persistent, or that he has experienced marginal adjustment. R. at 16. Plaintiff's

medical treatment with respect to his mental health disorders is scant and sporadic, and although Plaintiff periodically sought treatment with his primary care physician, Dr. Harrington at Churchland Internal Medicine, Plaintiff rarely sought additional treatment outside of that. The records do not support the type of ongoing treatment which impacted the symptoms and signs of Plaintiff's mental disorders, nor do they support the notion that Plaintiff had minimal capacity to adapt to changes or demands. Thus, there is substantial evidence to support the ALJ's determination that the Plaintiff's impairments do not rise to the level of serious and persistent to satisfy the paragraph C criteria.

Therefore, the Court **FINDS** substantial evidence supports the ALJ's finding that none of Plaintiff's limitations were either extreme or marked, and therefore Plaintiff did not meet the listing criteria in 12.02, 12.04, or 12.06.

## VI. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 17, be **DENIED**, the Commissioner's Motion for Summary Judgment, ECF No. 20, be **GRANTED**, and the final decision of the Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**.

## VII. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure

Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to mail a copy of this Report and Recommendation to *pro se* Plaintiff and forward a copy of the same to counsel for the Commissioner.

/s/ Lawrence R. Leonard
United States Magistrate Judge

Newport News, Virginia
July 2, 2020

19